UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE RESTRAINT OF REAL PROPERTY ) <br> LOCATED AT 1254 SANDY VALLEY ROAD, ) <br> HENDERSONVILLE, TENNESSEE 37075 ) <br> ) <br> ) | UNDER SEAL <br> No. _____ |

### UNITED STATES' EX PARTE APPLICATION
### TO REGISTER AND ENFORCE A FOREIGN RESTRAINING ORDER
### PURSUANT TO 28 U.S.C. § 2467(d)(3) AND 18 U.S.C. § 983(j)

Applicant United States of America, by and through its undersigned attorneys, respectfully submits this application for a restraining order pursuant to 28 U.S.C. § 2467(d)(3) and 18 U.S.C. § 983(j). This application seeks enforcement of a foreign restraining order issued by the Regional Court in Utrecht in the Netherlands in order to preserve the availability of a U.S. asset that is subject to confiscation (forfeiture) in the Netherlands. The asset will be restrained pending the presentation of a final Dutch confiscation judgment to the United States' central authority for execution pursuant to the relevant bilateral treaty.

In August 2014, the Department of Justice's Office of International Affairs referred an initial mutual legal assistance ("MLA") request from the Netherlands to the Asset Forfeiture and Money Laundering Section ("AFMLS") of the United States Department of Justice. In April 2015, Dutch authorities sent a third supplemental request seeking the enforcement of a restraining order (hereinafter, the "Dutch Restraining Order" or "Restraint") issued on April 16, 2015, against one piece of real property in the rural suburbs of Nashville particularly described as 1254 Sandy Valley Road, Hendersonville, Tennessee 37075.[1] The Dutch Restraining Order

---

[1] The Dutch Order erroneously states that the property is located in Goodlettsville, TN. Property records

1

was issued by Public Prosecutor E.A.C. Sachs, acting under the explicit authority of Judge M.A.A.T. Embers of the Regional Court in Utrecht. The beneficial owner of the home and land, Wim Hedwig Axwijk ("Wim Axwijk"), is the target of an ongoing investigation conducted by the Dutch Public Prosecutor's Office and the Dutch police. Wim Axwijk is suspected of laundering the proceeds of drug trafficking in violation of Article 420bis and 420ter of the Dutch Criminal Code and possessing illegal ammunition in violation of Articles 26 and 55 of the Dutch Weapons and Ammunition Act.

The Dutch Restraining Order has been certified for enforcement by the Assistant Attorney General ("AAG") of the U.S. Department of Justice's Criminal Division in accordance with 28 U.S.C. § 2467(d)(3) and (d)(3)(B)(ii). *See* Ex. 1, AAG Certification and Dutch R.O. This application seeks to restrain the real property in Tennessee, valued at approximately $500,000, which is nominally owned by the girlfriend of the suspect, Venita White ("White"), but is beneficially owned by the suspect in the Dutch investigation, Wim Axwijk. Should this Court issue the attached Proposed Order, this U.S. restraint will preserve the asset for forfeiture pending the conclusion of criminal and confiscation proceedings in the Netherlands.

I. **JURISDICTION AND VENUE**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

---

obtained by U.S. law enforcement as well as the U.S. Postal Service's website confirm that the house beneficially owned by Wim Axwijk is actually located in Hendersonville, the city bordering Goodlettsville, TN. With the concurrence of the Dutch authorities, the United States has accurately described 1254 Sandy Valley Road in its Proposed Order as being in Hendersonville.

2

## II. APPLICATION

The United States seeks the issuance of a restraining order pursuant to § 2467(d)(3) to enforce a Dutch Restraining Order against an asset acquired in 2008 by one of the targets of a Dutch investigation during the timeframe of that target's alleged criminal activity. With the appropriate certification of the Assistant Attorney General annexed hereto as Exhibit 1, the United States applies to this Court to issue an order restraining real property located in the United States, specifically:

> Land in Sumner County, Tennessee, Being Lot No. 7 on the Plan of Sandy Valley Estates, as shown on plat of record in Plat Book 23, Page 327, in the Register's Office, Sumner County, Tennessee, also known as Parcel ID # 116H-A-7, or 1254 Sandy Valley Road, Hendersonville, Tennessee 37075.

A warranty deed conveying the property to Wim Axwijk was recorded on June 9, 2008. In connection with this initial purchase, Venita White held and exercised power of attorney for Wim Axwijk. He was listed on the warranty deed as an unmarried man and purchased the home without a mortgage, entirely for cash. On August 11, 2014—after Dutch authorities conducted searches in the Netherlands in furtherance of their criminal investigation—Wim Axwijk executed a quitclaim deed transferring the property to White. This transaction represents a transfer of title, and there is still no mortgage recorded on the property. No sale price was indicated on the quitclaim deed and it is highly unlikely that this was an arm's length, bona fide sale, as opposed to an attempt to conceal potential criminal proceeds or assets subject to confiscation under Dutch law. Based on property records obtained by U.S. law enforcement agents in Sumner County and information gathered by Dutch investigators, both Governments suspect that Wim Axwijk is the true beneficial owner of the property and that Venita White is simply a nominee. The property was originally purchased for $359,000 in 2008 and is estimated

to be worth approximately $500,000 today.

### III. FACTUAL BACKGROUND

The Dutch criminal investigation is focused on members of the Axwijk family, including Wim (father), Justin (son), Jennifer (daughter), and Dennis Goedee (formerly married to Wim's sister). In essence, the family is suspected of drug trafficking and laundering their proceeds through the acquisition of real estate in the Netherlands using two trusts, Severa Trust and A&O International Trust, both based in Liechtenstein. The Dutch Criminal Intelligence Unit reported that Wim, Justin, and Jennifer Axwijk deal cocaine and have been doing so since at least 2007.

None of the family members have known sources of legal income sufficient to justify the purchase of assets by the trusts in recent years and trust assets have not been declared to the Dutch tax authorities. Wim Axwijk, in particular, has not had a known source of legal income since 2009. Justin Axwijk runs his own security business, Inity Security Services BV, and he owns property, but his profits are minimal.

Dutch investigators believe that Wim Axwijk is the founder and beneficial owner of Severa Trust and Justin Axwijk is the founder and beneficial owner of A&O International Trust. In the period between 2008 and 2010, the two trusts purchased or financed the purchase of nine properties in the Netherlands for approximately $2 million. The properties are used almost exclusively by members of the Axwijk family and their close associates. A company named Coulini Real Estate Services BV, owned by an associate, collects the rental income, which is most often paid by members of the Axwijk family in cash. Dutch investigators suspect that the trusts and company structures are used to conceal the fact that the Axwijk family owns the nine properties and that the "rental payments" are in fact drug proceeds. Paying rent to the third party company is the mechanism used to launder profits derived from drug trafficking. Additionally,

bank records of Axwijk family members show a pattern of large, unexplained cash deposits and followed by withdrawals in smaller denominations.

The Dutch investigation was initiated by a tip called into the Netherlands' Anonymous Crime Reporting Center in late 2007. According to the tip, Justin Axwijk was dealing cocaine and ecstasy, and working with his former uncle by marriage, Dennis Goedee.[2] In 2011, Dutch investigators reported that Wim and Justin Axwijk were dealing cocaine in the streets. Jennifer Axwijk was involved in the enterprise as well and was known to package the narcotics. Wim Axwijk was allegedly in charge of sourcing the drugs.

In April 2014, authorized searches were executed by Dutch police at the homes of a number of Axwijk family members. Evidence that Wim and Justin Axwijk control the trusts was uncovered, as well as documents indicating that Severa Trust was interested in acquiring a building in the United States. At Justin Axwijk's residence, the following was discovered: €2,554,530 in currency hidden in a wall; a money counting machine; and an unlicensed, 9 mm caliber firearm, serial number 27-072357.[3] At Wim Axwijk's residence, an empty firearm case was found along with a manual for a Sig Sauer firearm and Category III ammunition, which is illegal under Dutch law. Wim Axwijk does not have a firearm license. At Justin Axwijk's

---

[2] In 2013, Dennis Goedee was convicted and sentenced to two years in prison in a separate drug trafficking investigation. He was convicted of participating in a criminal organization that engaged in drug trafficking between 2008 and 2010 and laundering the proceeds of the organization in the amount of €217,410. Goedee has appealed.

[3] U.S. law enforcement has confirmed that this firearm was purchased in the United States by Venita White on August 18, 2006. White is suspected to be Wim Axwijk's girlfriend and she resides at the property to be restrained in Hendersonville, TN. Dutch evidence shows that Wim Axwijk and other family members frequently use cash for airfare to the United States and several witnesses stated that Wim Axwijk lives abroad with Venita White. He also has applied for several U.S. visas. Wim Axwijk did not declare ownership of the Tennessee property to Dutch tax authorities, as he should have being a Dutch citizen with a registered address in the Netherlands. A company called Winita Investments Inc.—which Dutch authorities suspect to be controlled by "Wim" and "Venita" ("Winita")—has its registered address at another house owned by Venita White in Nashville, TN.

business address, 5 kilograms of cocaine and 2.8 grams of MDMA (ecstasy) were discovered, as well as cartons of zip-lock bags and counterfeit currency detectors.[4]

## IV. LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)). Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for and the court may issue a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

Section 2467(d)(3)(A) requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by a foreign court that lacked subject matter jurisdiction, or was obtained by fraud. The statute's cross-references to § 983(j) do not require that criminal or civil forfeiture proceedings be filed in the United States to enforce a foreign court's restraining order, but rather, the foreign criminal or forfeiture proceedings

---

[4] The Netherlands brought criminal charges against Justin Axwijk and his wife relating to the €2,554,530 in currency, the drugs found at his business premises, and the firearm. On March 19, 2015, Justin Axwijk was convicted by a Dutch court for possession of cocaine and an unlicensed firearm, ammunition, and a can of tear gas. He was acquitted of money laundering charges and his wife was acquitted of all charges. Both the defendant and Public Prosecutor appealed, and the judgment and three-year sentence are not yet final. Wim Axwijk's criminal prosecution is being handled separately by the Dutch Public Prosecutor.

initiated abroad should comport with U.S. notions of due process. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013) (holding that the filing of a foreign civil forfeiture complaint is not required, but that "applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those that the filing of an American civil forfeiture complaint" would have afforded). In line with analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C. § 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of foreign criminal or forfeiture proceedings.

Certification by the U.S. Attorney General or her authorized designee that enforcement of the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a foreign order. *See* 28 U.S.C. § 2467(b)(2). On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division. *See* Ex. 2, DOJ Order No. 2820-2006. The AAG's determination is not subject to judicial review. *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## V.  DISCUSSION

### A.  The Dutch Restraining Order Meets the Criteria for Enforcement Under § 2467(d)(3)(A).

Section 2467 sets forth the following criteria that are relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign nation seeking enforcement of the order are parties to a formal, international agreement providing for mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether

the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the foreign court had subject matter jurisdiction to issue the restraint, *id.*; and (5) whether there is any reason to believe the foreign order was obtained by fraud, *id.*[5] The Dutch Restraining Order meets the above criteria for registration and enforcement pursuant to § 2467 and, therefore, entry of a U.S. restraining order is both necessary and appropriate to preserve the property for eventual confiscation in the Netherlands.

1. <u>Agreement on Forfeiture Assistance</u>

First, the United States and the Netherlands are parties to formal, international agreements obligating each nation to provide mutual legal assistance in investigations, prosecutions, and other proceedings, including assistance relating to forfeiture and the freezing and seizing of assets, such that the first criterion is satisfied.[6]

2. <u>Attorney General Certification</u>

Second, the Dutch Restraining Order was certified by the Assistant Attorney General on May 16, 2016.[7] In this case, the "Order" is comprised of two parts—a Judicial Authorization and a Prosecutor's Order. See Ex. 1, AAG Certification and Dutch R.O. The AAG, in certifying the Order, acknowledged that she has considered the facts of the case, the foreign law, the

---

[5] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Inv. Accts. at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process"). An affected party with a legally protected property interest may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

[6] *See* Agreement Regarding Mutual Cooperation in the Tracing, Freezing, Seizure and Forfeiture of Proceeds and Instrumentalities of Crime and the Sharing of Forfeited Assets, arts. 2-3, U.S.-Neth., Nov. 20, 1992, T.I.A.S. No. 12,482; Treaty Between the Kingdom of the Netherlands and the United States of America on Mutual Assistance in Criminal Matters, U.S.-Neth., arts. 1, 6, June 12, 1981, 35 U.S.T. 1361.

[7] On May 9, 2016, AAG Leslie Caldwell granted written approval on a DOJ memorandum, but her Principal Deputy signed the certification form to be filed with this Court on May 16.

applicable U.S. law, and the circumstances of the judiciary from where the order came, and has concluded that enforcement of the foreign restraining order, pursuant to 28 U.S.C. § 2467, is "in the interest of justice." *See id.* Thus, the second criterion for enforcement is met.

3. <u>Due Process</u>

Third, the April 16, 2015, Dutch Restraining Order was issued consistent with due process. Based on a reasonable suspicion that the criminal actions by the suspects have resulted in illegal profits, proceedings have been initiated in the Netherlands for the purpose of determining, tracing, and confiscating the illegally obtained profits. A criminal financial investigation ("CFI") into Wim Axwijk was authorized by the Regional Court in Utrecht on March 20, 2014, pursuant to Article 36(e) of the Dutch Criminal Code and Article 126 of the Dutch Code of Criminal Procedure. *See* Ex. 3, Judicial Authorization to Open CFI. In the context of this CFI, the judge has made an estimate that the amount of illegal proceeds obtained by the suspects through their criminal activity is €5,115,432. Thus, on September 11, 2014, the judge granted a specific authorization for the restraint of certain assets alleged to be the proceeds of crime, including the property beneficially owned by Wim Axwijk at 1254 Sandy Valley Road, Hendersonville, Tennessee 37075. *See* Ex. 1, p. 2 (Judicial Authorization for Seizure). In the Netherlands, in the context of a court-authorized CFI, a Public Prosecutor is permitted to order the seizure and restraint of assets without the intervention of a judge. However, at the request of the United States, such an intervention was sought, and thus United States presents for this Court's enforcement both the Judicial Authorization and the Prosecutor's Order, as two parts of the Dutch Restraining Order. *See id.*; *see also* Ex. 1, p. 4 (Prosecutor's Restraining Order).

According to Articles 94 and 94a of the Dutch Code of Criminal Procedure, a prejudgment restraining order may be issued to preserve property and secure the right of recourse

9

with respect to confiscation of the proceeds and advantages of a qualifying serious offense. The Dutch Restraining Order, issued pursuant to Articles 94 and 94a, is a provisional measure to preserve the property for later confiscation (forfeiture).[8] Per the terms of the Prosecutor's Restraining Order, the property is subject to confiscation under Articles 33 and 33a of the Dutch Criminal Code because it constitutes the proceeds of crime.

As permitted under Dutch law, the Dutch Public Prosecutor satisfied the Dutch court that the Restraining Order must be issued ex parte because there is a risk that notifying the suspect before the Order is registered and enforced in the United States could result in the sale or dissipation of the asset. Therefore, Wim Axwijk has not yet been given notice of the existence of the Dutch Restraining Order. Should this Court enforce the Dutch Restraining Order, Dutch authorities will provide notice of the Order to Wim Axwijk. Upon such notice, under Dutch law, the owner of a restrained property will have an opportunity to object by filing a complaint in Dutch court. Finally, this Court previously has enforced restraining orders from the Dutch judiciary.[9]

    4.    <u>Subject Matter Jurisdiction</u>

Fourth, the Netherlands has represented to the United States that the Regional Court in Utrecht in the Netherlands is the proper authority to authorize the issuance of the Dutch Restraining Order in this matter because it is the court with jurisdiction over the Dutch CFI.

---

[8] Under Article 94 of the Dutch Code of Criminal Procedure, assets subject to seizure include those which may be confiscated under Article 36e of the Dutch Penal Code. Article 94a of the Code of Criminal Procedure provides that suspicion of a criminal offense is a sufficient basis for the seizure of assets. Article 94a contains four subsections authorizing seizure in order to safeguard assets in the event that a confiscation order or criminal fine is issued upon conviction for a criminal offense.

[9] *See, e.g.*, *In re Restraint of Assets Owned or Controlled by Itzhak Grynsztein*, No. 1:15-mc-01047-RWR, R.O., ECF No. 2 (D.D.C. Sept. 8, 2015).

Furthermore, the Public Prosecutor, E.A.C. Sachs, has represented that she is the proper authority to order the restraint of the property on the basis of Articles 94a and 126b of the Dutch Code of Criminal Procedure. The United States has no reason to doubt these representations. Taking into account the presumption of regularity of foreign judicial proceedings and these facts, the fourth criterion for enforcement is met. *See In re Restraint of Certain Inv. Accts. at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d at 42 and discussion herein, n.4.

5. <u>Absence of Fraud</u>

Furthermore, there is no reason to believe that April 16, 2015 Dutch Restraining Order was obtained by fraud on the part of Dutch authorities. Accordingly, the five criteria pertinent in considering an application to enforce and register a foreign restraining order is satisfied.

**B.     Dual Forfeitability Is Satisfied.**

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order would also give rise to forfeiture if it had been committed in in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual forfeitability). In the published decisions of this Court, one judge *has* applied the requirement without discussion, and another *declined* to resolve the question of whether dual forfeitability must be demonstrated by the United States at the restraint phase. *Compare In re Seizure of Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C. Nov. 9, 2012) (stating that dual forfeitability is a requirement for enforcement of a foreign

11

restraining order and deciding that the United States satisfied it), *with In re Restraint of Certain Inv. Accts. at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d at 41 ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that applies to final orders of forfeiture . . . however, the Court need not resolve the question . . . because, even assuming its applicability, it is satisfied in this case"). As a practical matter, the United States acknowledges that dual forfeitability may become relevant if and when the Netherlands asks the United States to enforce a confiscation judgment and the United States applies to enforce such a final judgment.

Here, dual forfeitability would be satisfied because Wim Axwijk's underlying conduct would be chargeable under U.S. criminal laws giving rise to forfeiture had his acts been committed here. Specifically, his conduct could violate the following statutes:

a. 21 U.S.C. § 846 (conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1): cocaine, a Schedule II narcotic, and MDMA, a Schedule II narcotic);

b. 18 U.S.C. § 1956(h) (money laundering conspiracy based on the specified unlawful activity of dealing in controlled substances).

Wim Axwijk, his family members, and close associates engaged in a conspiracy to launder the proceeds of their own drug trafficking for the purpose of concealing the nature, source, location, ownership, or control of the proceeds. They established Liechtenstein trusts so as not to disclose their ownership interests in the Dutch properties they acquired with proceeds, and they rented those properties, to themselves, through another company, concealing their involvement. They subsequently paid rent in cash to that company, where such rent was allegedly derived from drug trafficking. Axwijk and his co-conspirators—knowing the funds were proceeds and knowing the financial transactions were designed to conceal the nature, source, location, or ownership thereof—conducted financial transactions by acquiring property

and utilizing financial institutions affecting interstate or foreign commerce.

Possession with intent to distribute a controlled substance is an offense for which forfeiture is authorized. *See* 18 U.S.C. § 981(a)(1)(B)(i) (civil forfeiture of any property constituting, derived from, or traceable to the proceeds of an offense against a foreign nation if the offense involves the sale or distribution of a controlled substance); § 981(a)(1)(C) (forfeiture of property constituting or derived from proceeds of an SUA, e.g., possession with intent to distribute); 21 U.S.C. § 853(a)(1)-(2) (criminal forfeiture of any property constituting or derived from the proceeds of a drug offense or used to commit or facilitate the commission of a drug offense). Additionally, possession with intent to distribute (21 U.S.C. § 841) is a specified unlawful activity ("SUA") for money laundering. *See* 18 U.S.C. § 1956(c)(7)(A) (any act constituting an offense under § 1961(1) is an SUA); § 1961(1)(D) ("buying, selling, or otherwise dealing in a controlled substance" constitutes an offense). Finally, any property involved in, or traceable to, a money laundering transaction is forfeitable. *See* § 982(a)(1) (criminal forfeiture); § 981(a)(1)(A) (civil forfeiture).

### C. This Court Should Act to Enforce the Dutch Restraining Order by Issuing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).

The Dutch Restraining Order, comprised of the Public Prosecutor's Order (April 16, 2015) and the Judicial Authorization (September 11, 2014), reflects the intention of the Government of the Netherlands to seek the confiscation of assets as a result of a criminal conviction against Wim Axwijk. Thus, the United States, acting in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order or judgment against the defendant's U.S. asset.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C.

13

§ 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the Dutch Restraining Order—to "preserve the availability of property . . . subject to forfeiture" for the duration of the Dutch criminal and confiscation proceedings. *See* 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order at any time before or after the initiation of foreign forfeiture proceedings). As such, this Court should recognize the Restraining Order from the Regional Court in Utrecht and enforce it by restraining the specified asset and prohibiting Wim Axwijk, Venita White, and all others, from disposing of the Tennessee property or rights thereto. *See* Ex. 1, p. 4 (ordering the restraint of the Tennessee property as the proceeds crime; in this case, proceeds are estimated by the Dutch court at €5,115,432). To execute any order issued by this Court, the United States will file a lis pendens on the Tennessee property with the Sunmer County Register of Deeds.

## VI.   CONCLUSION

The United States respectfully requests that this Court enforce the attached Dutch Restraining Order, consistent with U.S. obligations under the relevant treaty and agreement, by entering the attached Restraining Order pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii), and 18 U.S.C. § 983(j)(1)(A). The United States anticipates the assistance of the Dutch Public Prosecutor in providing notice and a copy of any order issued by this Court to Wim Axwijk or his attorney once the asset is secured, and the United States will separately send notice and a copy of the order to Venita White at her U.S. address.

                                              Respectfully submitted,

                                              M. KENDALL DAY, CHIEF
                                              ASSET FORFEITURE AND MONEY
                                              LAUNDERING SECTION

By: *\_\_\_/s/ Marybeth Grunstra\_\_\_\_\_*
MARYBETH GRUNSTRA
Trial Attorney
A.J. DE KLUIVER
Deputy Chief
U.S. Department of Justice
Criminal Division
Asset Forfeiture and Money
  Laundering Section
1400 New York Avenue NW, 10100
Washington, DC  20530
Telephone:  (202) 514-1263
Email:  Marybeth.Grunstra@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA